IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No.: 5:14-CV-896-FL

| | |
|---|---|
| MADAY LIMA,<br><br>    *Plaintiff,*<br><br>    v.<br><br>MH & WH, LLC; HALLE BUILDING GROUP; MICHAEL J. HOWINGTON; and WENDY A. HOWINGTON;<br><br>    *Defendants* | **HALLE BUILDING GROUP'S BRIEF SUPPORTING MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## NATURE OF THE MOTION

Halle Building Group ("Halle Building") moves the Court for summary judgment on Plaintiff's claims for:

- Violation of North Carolina's Wage & Hour Act,

- Violation of Title VII,

- Assault and battery,

- Intentional infliction of emotional distress ("IIED"),

- Actual medical damages, lost wages, and pain and suffering.

## PROCEDURAL HISTORY

On December 22, 2014, Plaintiff filed a motion for leave to proceed *informa pauperis* [D.E. 1]. On July 5, 2015, Plaintiff filed her complaint [D.E. 5]. On August 12, 2015, the Court adopted Magistrate Judge Gates's recommendation regarding a frivolity review [D.E. 4] and ordered that Plaintiff proceed on the following claims: (1) Title VII claim against MH & WH and Halle Building; (2) FLSA and NCWHA claims against MH & WH, Halle Building, and Wendy

Howington; and (3) Assault and battery claims against Terry Stanley, MH & WH, and Halle Building [D.E. 7].

On December 31, 2015, after receiving extensions of time from the Court, Plaintiff filed proposed summonses [D.E. 13]. On March 30, 2016, Mr. Stanley filed a motion to dismiss for insufficient process, lack of personal jurisdiction, and failure to make timely service [D.E. 49]. On May 10, 2016, the Court ordered a stay of discovery as it considered the motion to dismiss. On February 9, 2017, the Court granted Mr. Stanley's motion to dismiss [D.E. 72]. On March 16, 2017, the Court entered the Case Management Order [D.E. 75]. The Case Management Order provided for two months of discovery, such that discovery would close on June 30, 2017.

On May 31, 2017, Plaintiff's counsel filed notices of appearance [D.E. 81, 82]. On June 19, 2017, Plaintiff filed a motion to amend the Case Management Order to allow additional time for class-action-related discovery [D.E. 85, 85-1]. On July 14, 2017, the Court granted in part and denied in part Plaintiff's motion to amend the Case Management Order, extending regular discovery to November [D.E. 87].

On July 18, 2017, Plaintiff filed a motion for leave to file an amended complaint, which attempted to clarify her pleadings and transform the lawsuit into a class action [D.E. 88]. On July 19, 2017, Plaintiff moved to stay discovery [D.E. 90]. Defendants opposed the motion for leave [D.E. 91, 92] and the motion to stay discovery [D.E. 93]. On August 23, 2017, the Court denied Plaintiff's motion to stay discovery [D.E. 95].

On November 3, 2017, the Court granted in part and denied in part Plaintiff's motion to file an amended complaint and, in essence, allowed Plaintiff to clarify her pleadings while rejecting the class-action claims [D.E. 102]. On November 8, 2017, the Court granted the parties' joint motion to extend discovery to January 23, 2018, for the limited purpose of conducting Plaintiff's

deposition [D.E. 104]. On November 9, 2017, Plaintiff filed her Amended Complaint [D.E. 105].

On February 23, 2018, the parties attempted mediation but reached an impasse. Before the Court is Halle Building's motion for partial summary judgment.

## STATEMENT OF FACTS

Plaintiff was employed and paid by Defendant MH & WH, LLC ("MH&WH"). Rifkin Decl. ¶ 4; *see* Ex. A (Halle Building's vendor list); Ex. B (Plaintiff's paystubs from MH&WH). MH&WH provides construction labor. MH&WH (M. Howington) Dep. 21:4–12, 27:18–21. MH&WH is owned by Defendants Michael and Wendy Howington. *Id.* 107:2–12. Defendant Halle Building is a general contractor for residential homes and apartment complexes. Halle Dep. 18:15–25; MH&WH (M. Howington) Dep. 34:1–2.

MH&WH supplied labor to Halle Building for construction projects. MH&WH (M. Howington) Dep. 27:18–21. On those projects, Halle Building was the general contractor and MH&WH was one of the subcontractors. Halle Dep. 38:24–39:10.

During the relevant time period, Mr. Howington was an independent contractor for Halle Building. MH&WH (M. Howington) Dep. 35:23–36:3, 37:14–25. Mr. Howington was responsible for management of Halle Building's construction. *Id.* He also had an ownership interest in Halle Building. *Id.* 36:4–7. Mr. Howington's management responsibilities included design, site work, and construction. *Id.* 37:14–39:11. Mr. Howington would visit the construction sites to check on the quality of work performed by the subcontractors; he would speak to the respective supervisor of a subcontractor if there were any issues. *Id.* 38:2–39:11.

Mr. Howington hired Plaintiff. *Id.* 78:5–8; *accord* Lima Dep. 34:5–19, 38:11–14. Plaintiff reported directly to Moises Hernandez and Martin Arias, who were employees of MH&WH. M. Howington Dep. 22:14–18, 24:1–10; MH&WH (M. Howington) Dep. 67:11–20, 69:1–70:1, 73:3–

19, 77:5–15, 117:10–19; Lima Dep. 39:5–11, 40:8–11; *see also* Ex. C (MH&WH Employee Contact List).

Terry Stanley was a superintendent for Halle Building. Stanley Dep. 14:1–24, 44:4–15; Rifkin Decl. ¶ 6. Mr. Stanley's duties as superintendent, in regards to subcontractors, were limited to scheduling, monitoring, and approving the subcontractor's work. Rifkin Decl. ¶¶ 6–7. Mr. Stanley testified that, despite being a Halle Building superintendent, he directed about twelve MH&WH laborers. Stanley Dep. 18:1–3, 18:22–25. Mr. Stanley confessed, however, that he did so because he had *mistakenly assumed* that the laborers were Halle Building employees. *Id.* 20:12–21:8, 25:20–26:4.[1]

Mr. Stanley's direct supervision of these MH&WH laborers was unauthorized by Halle Building and inconsistent with Mr. Stanley's duties as superintendent. Rifkin Decl. ¶ 10. As in all relationships between general contractors and subcontractors, if a Halle Building superintendent identified poor work by a subcontractor's laborers, then the superintendent was to instruct the subcontractor of the issue—Halle Building's superintendents were not to directly instruct the subcontractor's laborers. Halle Dep. 48:11–49:8; Rifkin Decl. ¶¶ 8–9; *accord* MH&WH (M. Howington) Dep. 38:2–39:11. Despite (inappropriately) instructing the MH&WH laborers, Mr. Stanley testified that he never fired or disciplined any of them. Stanley Dep. 24:14–19.

Mr. Howington testified that Plaintiff was good worker. MH&WH (M. Howington) Dep. 121:8–10. Mr. Stanley testified that Plaintiff was a good worker. Stanley Dep. 28:3–4. Mr.

---

[1] Mr. Stanley had other misunderstandings about his employment with Halle Building. For example, Mr. Stanley mistakenly assumed Mark Grambling, to whom Mr. Stanley reported, was employed by Halle Building, Stanley Dep. 47:5–48:8; but Mr. Grambling was only an independent contractor for Halle Building who provided consulting advice. *Id.*; MH&WH (M. Howington) Dep. 75:10–25.

Stanley only identified a single incident with Plaintiff: On her last day he instructed her to get back to work so that the site would be ready for an inspection the next day. *Id.* 28:5–18, 55:7–19. Mr. Stanley threatened that if the work was not completed on time, then people would have to stay late to get it done. *Id.* 28:5–18. (Notably, Ms. Lima testified that, the day before, she had informed Mr. Hernandez that she believed she was not being paid for all her overtime hours and she would refuse to work any overtime in the future. Lima Dep. 181:18–182:2.) Mr. Stanley never saw Plaintiff after this incident. Stanley Dep. 30:3–5.

Plaintiff tells a different story about Mr. Stanley.[2] Plaintiff testified that Mr. Stanley sexually harassed her by using vulgar language and gestures and throwing objects on the ground. Lima Dep. 58:15–24, 60:2–22, 73:5–25, 83:9–85:6. Plaintiff asserts that Mr. Stanley enjoyed harassing her. Lima Dep. 71:13–72:5. Plaintiff testified that, on her last day, Mr. Stanley hunted her down and threw a sealant canister at her head, which she blocked with her arm. Lima Dep. 89:24–93:11. (Plaintiff also testified that police officers repeatedly refused to write a report about this alleged assault. Lima Dep. 116:14–119:12.) Plaintiff claims that the alleged assault caused her to suffer post-traumatic-stress disorder (PTSD), permanent paralysis in her left arm and leg, and emotional distress. Am. Compl. ¶¶ 89, 96, 101, 106, 113; *see* Lima Dep. 8:13–24, 12:22–25, 160:7–20, 163:6–15. Plaintiff claims that the incident has caused her to be physically unable to work. Lima Dep. 12:22–25.

## ARGUMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is "genuine" if the evidence

---

[2] The parties dispute Plaintiff's version of events. Halle Building provides Plaintiff's version of the facts for context and in support its arguments below.

would permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## I. PLAINTIFF'S NCWHA CLAIM SHOULD BE DISMISSED.

Plaintiff cannot sue Halle Building for a violation of North Carolina's Wage & Hour Act ("NCWHA") because Halle Building was not Plaintiff's employer—MH&WH was Plaintiff's employer. Alternatively, if Halle Building is somehow liable under the NCWHA, such liability does not extend to unpaid overtime wages.

### A. The NCWHA does not permit joint employer liability.

North Carolina does not recognize the joint-employer doctrine for claims under the NCWHA. The joint-employer doctrine is the federal judiciary's interpretation of federal statutory language. *See, e.g.*, *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 133–34 (4th Cir. 2017). Halle Building is not aware of a single North Carolina court decision having ever interpreted the NCWHA to incorporate the joint-employer doctrine. To recognize the joint-employer doctrine here, the Court would be expanding the reach of the NCWHA; however, when addressing matters of state law, federal courts "should not create or expand [the] State's public policy." *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995). MH&WH is Plaintiff's sole employer under the NCWHA. Rifkin Decl. ¶ 4; *see* Ex. A (Halle Building's vendor list); Ex. B (Plaintiff's paystubs from MH&WH). Accordingly, Plaintiff cannot survive summary judgment on her claim against Halle Building for violating the NCWHA.

### B. The NCWHA does not cover overtime wages.

Alternatively, assuming Halle Building could be held liable under the NCWHA as a joint employer, Plaintiff cannot restate her FLSA claim for unpaid overtime wages as a second claim under the NCWHA. The NCWHA expressly reserves the regulation of overtime wages to the FLSA: The "provisions of . . . G.S. 95-25.4 (Overtime) do not apply to . . . [a]ny person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act[.]" N.C. Gen. Stat. § 95-25.14(a)(1).[3] Thus, when a defendant is "engaged in the production of goods for commerce," it is "exempt from the overtime requirement of the North Carolina Wage and Hour Act in relation to its employment" of a plaintiff. *Jones v. Philip Morris USA, Inc.*, No. 1:03CV00122, 2004 WL 769456, at *3 (M.D.N.C. Apr. 8, 2004); *see Spencer v. Hyde County*, 959 F. Supp. 721, 728 (E.D.N.C.1997); *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 354, 416 S.E.2d 166, 170 (1992) ("If, as the parties now believe, defendant Oakdale Knitting is covered by the FLSA, it would be exempt from the [NCWHA] statute."). There is no dispute that Halle Building, which constructs residential homes and apartment complexes, is engaged in the production of goods for commerce. *See* Halle Dep. 18:15–25; MH&WH (M. Howington) Dep. 34:1–2. Therefore, the NCWHA's overtime provisions cannot apply to Halle Building. Because the NCWHA does not grant relief for unpaid overtime wages, Halle Building

---

[3] The NCWHA's overtime section requires that each employer "pay each employee who works longer than 40 hours in any workweek at a rate of not less than time and one half of the regular rate of pay of the employee for those hours in excess of 40 per week." N.C. Gen. Stat. § 95-25.4(a).

is entitled to summary judgment on Plaintiff's NCWHA claim to the extent she seeks unpaid overtime wages.

## II.   PLAINTIFF CANNOT SUE HALLE BUILDING UNDER TITLE VII.

Plaintiff cannot establish that she timely initiated her Title VII action against Halle Building. Under Title VII, a claimant must bring a civil action against an EEOC respondent within 90 days of receiving a right-to-sue notice. 42 U.S.C. § 2000e-5(f)(1). The right-to-sue notice is specific to the respondent named in the underlying EEOC charge. *See Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998) ("[A] civil action may be brought only 'against the respondent named in the charge.'") (quoting 42 U.S.C. § 2000e–5(f)(1)). The claimant bears the burden of establishing that the civil action against the respondent was properly commenced. *See, e.g.*, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979) ("[A] plaintiff in a civil action under Title VII must . . . prove filing of a timely charge of discrimination with the Equal Opportunity Commission together with receipt of, and action on, a statutory notice of his right to sue.").

Here, Plaintiff has no evidence that she timely commenced her action against Halle Building. Plaintiff filed a charge against MH&WH on June 6, 2013 (Charge No. 433-2013-01807). *See* Ex. D (EEOC Charge against MH&WH). Plaintiff received a right-to-sue notice against MH&WH on September 23, 2014. *See* Ex. E (Notice of Right to Sue against MH & WH). Plaintiff filed a *separate charge* against Halle Building on August 14, 2013 (Charge No. 433-2013-02365). *See* Ex. F (EEOC Charge against Halle Building). Plaintiff has no evidence that she ever received a right-to-sue notice against Halle Building (much less evidence of *when* she received such a letter). Plaintiff has no evidence that she initiated her civil action against Halle Building within 90 days of receiving such notice.

Because Plaintiff cannot prove that she timely initiated her civil action against Halle Building, the Court should grant Halle Building summary judgment on Plaintiff's Title VII claim.

### III. HALLE BUILDING IS NOT VICARIOUSLY LIABLE FOR PLAINTIFF'S CLAIMS OF ASSAULT, BATTERY, AND IIED.

Halle Building cannot be held liable for Mr. Stanley's alleged torts because his purported misconduct was outside the scope of his employment. "An employer may be liable under the theory of respondeat superior when the employee's act was either expressly authorized, committed within the scope and in furtherance of the employer's business, or subsequently ratified by the employer." *Stanley v. Brooks*, 112 N.C. App. 609, 613, 436 S.E.2d 272, 274 (1993). There is no dispute that Halle Building never authorized or ratified Mr. Stanley's alleged torts. Furthermore, Mr. Stanley, to the extent he committed a tort against Plaintiff, was acting far beyond the scope of his employment.

To start with, Mr. Stanley's mere interactions with Plaintiff were outside of scope of his employment. Mr. Stanley was a superintendent for Halle Building; Plaintiff was an employee of a subcontractor. As such, if Mr. Stanley had any issues with Plaintiff, he should have raised those issues with Plaintiff's supervisor (Mr. Hernandez or Mr. Arias). Mr. Stanley, however, mistakenly believed that Plaintiff was a Halle Building employee. Based on his mistake, Mr. Stanley stepped outside the scope of his role as superintendent and supervised Plaintiff directly. Mr. Stanley's mistake regarding his authority does not expand the scope of his employment for Halle Building. *See Wachovia Bank of N.C., N.A. v. Bob Dunn Jaguar, Inc.*, 117 N.C. App. 165, 172, 450 S.E.2d 527, 531–32 (1994) ("Whether the agent acts within the apparent scope of his authority is determined by what the principal does, not by the unauthorized acts and contentions of the agent."); *see also* Restatement (Third) Of Agency § 8.09 (2006) ("An agent has a duty to take action only within the scope of the agent's actual authority.").

Based on Plaintiff's testimony, Mr. Stanley then took a second step outside the scope of his employment to intentionally batter, assault, and distress Plaintiff. "Intentional torts are seldom considered to be within the scope of an employee's employment." *Stanley v. Brooks*, 112 N.C. App. 609, 613, 436 S.E.2d 272, 274 (1993) (holding sexual harassment during test drive was outside scope of car salesmen's employment); *see also Medlin v. Bass*, 327 N.C. 587, 594, 398 S.E.2d 460, 464 (1990) (holding sexual assault of student was outside scope of school principal's employment). Indeed, Plaintiff testified that Mr. Stanley harassed her for his own pleasure and amusement. Lima Dep. 71:13–72:5. Tortious conduct committed for personal gratification is outside the scope of one's employment. *See Wegner v. Delly-Land Delicatessen, Inc.*, 270 N.C. 62, 68, 153 S.E.2d 804, 809 (1967) (holding assault was not act of employment "but was for some undisclosed, personal motive"); *Robinson v. McAlhaney*, 214 N.C. 180, 183, 198 S.E. 647, 650 (1938) (holding assault was not act of employment, but was "prompted by a spirit of vindictiveness or to gratify his personal animosity").

Therefore, even if Plaintiff's accusations were true, Mr. Stanley's tortious conduct occurred while he was two degrees removed from the scope his employment for Halle Building. Under North Carolina law, Halle Building cannot be held vicariously liable for an employee, who while already beyond the scope of his authority, harms someone because of personal spite.

### IV. PLAINTIFF CANNOT ESTABLISH HER CLAIMS FOR ACTUAL MEDICAL DAMAGES, ACTUAL LOST WAGES, AND "PAIN AND SUFFERING."

Plaintiff asserts that her Title VII claim and tort claims entitle her to actual medical damages, lost wages, and damages for "pain and suffering." Plaintiff, however, cannot establish causation for these damages. Consequently, Plaintiff's claims for actual medical damages and pain, lost wages, and suffering should be dismissed.

### A. Plaintiff cannot establish actual medical damages.

Plaintiff contends that she is entitled to actual damages of paralysis and PTSD (and associated medical expenses) based on her Title VII and tort claims. Plaintiff, however, cannot prove these medical damages.

Under North Carolina law, actual damages (or compensatory damages) "mean some actual loss, hurt or harm resulting from the illegal invasion of a legal right." *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474–75 (1991), *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (1992). The purpose of actual damages are "to restore the plaintiff to [her] original condition or to make the plaintiff whole." *Watson v. Dixon*, 352 N.C. 343, 347, 532 S.E.2d 175, 178 (2000). Accordingly, to be awarded actual damages, the plaintiff must establish that the alleged tort was the cause of the actual damages. *Parris v. H. G. Fischer & Co.*, 221 N.C. 110, 19 S.E.2d 128, 129 (1942) (holding that consequential damages must be, to a reasonable degree of certainty, the natural and probable results of a tort); *Johnson v. Atl. Coast Line R. Co.*, 184 N.C. 101, 113 S.E. 606, 608 (1922) ("It is an elementary principle that all damages must flow directly and naturally from the wrong, and that they must be certain both in their nature and in respect to the cause from which they proceed."); *Sledge v. Reid*, 73 N.C. 440, 442 (1875) ("Consequential damage, to be recoverable, in an action of tort, must be the proximate consequence of the act complained of[.]").

Likewise, under Title VII, a plaintiff is able to receive actual damages. 42 U.S.C. § 1981a(b) (providing for compensatory damages). But such damages are permitted only if the plaintiff is able to establish that the damages were caused by the alleged discriminatory conduct. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013) ("When the law grants persons the right to compensation for injury from wrongful conduct, there must be some demonstrated connection, some link, between the injury sustained and the wrong alleged. The requisite relation

between prohibited conduct and compensable injury is governed by the principles of causation[.]").

Plaintiff alleges that Mr. Stanley's discriminatory and tortious conduct caused her actual medical injuries. *See* Am. Compl. ¶ 89 (Title VII: "loss of physical control"), ¶ 96 (Assault: "PTSD," "continues to suffer from partial paralysis," "pain," "significant medical expenses"), ¶ 101 (Battery: "PTSD," "continues to suffer from partial paralysis," "pain," "significant medical expenses"), ¶ 106 (IIED: "pain, including PTSD and partial paralysis," and "expenses for counseling and treatment of the conditions and symptoms"), ¶ 113 (Negligent Supervision: "PTSD" and "suffers from partial paralysis"); *see also* Lima Dep. 8:13–24, 12:22–25, 160:7–20, 163:6–15.

In order to establish actual medical injury, however, Plaintiff must be able to prove medical causation. Under North Carolina law, medical causation can only be proven by the testimony of a qualified medical expert: "In cases involving complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of an injury." *Holley v. ACTS, Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (internal quotation omitted); *see, e.g.*, *Young v. Hickory Business Furniture*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000) (requiring medical expert for cause of fibromyalgia); *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) (requiring medical expert for cause of herniated disc); *Miller v. Lucas*, 267 N.C. 1, 15, 147 S.E.2d 537, 547 (1966) (requiring medical expert for cause of ruptured disc); *Gilkin v. Burbage*, 263 N.C. 317, 324–25, 139 S.E.2d 753, 759–60 (1965) (same); *Day v. Brant*, 218 N.C. App. 1, 11, 721 S.E.2d 238, 246 (2012) (expressing rule); *Azar v. Presbyterian Hosp.*, 191 N.C. App. 367, 371, 663 S.E.2d 450, 453 (2008) (expressing rule); *Anderson v. Hous. Auth. of City of Raleigh*, 169 N.C. App. 167, 172,

609 S.E.2d 426, 429 (2005) (requiring medical expert for cause of headaches, nausea, and neuropsychiatric disabilities); *Hood v. Kennedy*, 5 N.C. App. 203, 206, 167 S.E.2d 874, 875 (1969) (requiring medical expert for cause of ankle pain, headaches, dizziness, and stomachaches).[4]

Federal courts have also held that only medical experts can give competent opinion testimony as to the cause of a medical injury. *See, e.g.*, *Miller v. Mandrin Homes, Ltd.*, 305 F. App'x 976, 980 (4th Cir. 2009) (per curiam) (unpublished) (finding no evidence of medical causation in absence of medical expert); *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 164 (4th Cir. 1988) ("[E]xpert opinion is of course the prime—indeed usually the only—way to prove medical causation."); *see also Fitzgerald v. Manning*, 679 F.2d 341, 350 (4th Cir. 1982); *Owens by Owens v. Bourns, Inc.*, 766 F.2d 145, 150 (4th Cir. 1985).

Plaintiff cannot prove medical causation because she has no qualified medical expert who can testify that Defendants' alleged misconduct caused her purported medical injuries. Plaintiff did not comply with any of her mandatory disclosures to identify an expert: Plaintiff's Rule 26(a)(1) disclosures do not identify a single witness who is qualified to testify to medical causation, *see* Ex. G (Pl.'s 1st Suppl. Initial Disclosures); Plaintiff never made any expert disclosures pursuant to Rule 26(a)(2)(A); and Plaintiff never provided an expert report under Rule 26(a)(2)(B). Plaintiff has no expert who can establish medical causation here.

Furthermore, Plaintiff cannot ambush Defendants with an *undisclosed* medical expert to avoid summary judgment. If Plaintiff fails to disclosure a witness properly, then she "is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at trial[.]" Fed. R.

---

[4] The causes of PTSD and paralysis are outside the knowledge of laymen. *See, e.g.*, *Lassiegne v. Taco Bell Corp.*, 202 F. Supp. 2d 512, 524 (E.D. La. 2002) (holding that cause of PTSD is not a matter "within the common knowledge of a layperson"); *Venters v. Sellers*, 293 Kan. 87, 104, 261 P.3d 538, 550 (2011) (holding that cause of paralysis required expert medical opinion).

Civ. P. 37(c)(1); *see* Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2289.1 (3d ed.) (automatic exclusion provisions of Rule 37(c)(1) apply to required disclosures from expert witnesses); *id.* § 2053 ("The Committee Note describes this as an automatic sanction that provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence." (quotation and alteration omitted)). The only exception is if the plaintiff proves that the failure to disclose was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 596–97 (4th Cir. 2003). The Fourth Circuit has cautioned litigants, however, that "Rule 26 disclosures are often *the centerpiece of discovery* in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278–79 (4th Cir. 2005) (emphasis added) (quotation and alteration omitted). Therefore, Rule 37(c)(1) "generally requires exclusion of evidence that a party seeks to offer but has failed to disclose." *S. States Rack & Fixture*, 318 F.3d at 597.

In addition to the absence of a medical expert, Plaintiff has not provided any evidence of the "medical expenses" she has incurred. *See, e.g.*, Am. Compl. ¶¶ 96, 106. Indeed, Plaintiff has not produced *a single medical bill*. Plaintiff cannot establish her medical expenses without presenting her medical bills. N.C. Gen. Stat. § 8-58.1 (An injured party is only competent to testify of medical expenses if "records or copies of such charges showing the amount paid or required to be paid in full satisfaction of such charges accompany such testimony.").[5] Furthermore, Rule

---

[5] Because North Carolina's law regarding the ability to receive medical expenses defines and limits the parties' primary rights and obligations, it must be applied under the *Erie* doctrine. *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 109 (4th Cir. 1991); *see DiAntonio v. Northampton-Accomack Mem'l Hosp.*, 628 F.2d 287, 291 (4th Cir. 1980) ("It has been recognized that there are circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule will be followed in order to give full effect to the state's

14

26(a)(1) requires a party to disclose "a computation of each category of damages claimed by the disclosing party" and provide "*the documents or other evidentiary material . . .* on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added). Because Plaintiff did not produce any medical bills (or even a calculation of her actual medical expenses), she cannot supply such information on a motion or at trial. *See* Fed. R. Civ. P. 37(c)(1).

Plaintiff is unable to establish medical causation (and her related medical expenses). Therefore, Halle Building is entitled to summary judgment on Plaintiff's claims for actual medical damages.[6]

### B. Plaintiff cannot establish actual lost wages.

Plaintiff claims that Mr. Stanley's alleged discriminatory and tortious acts caused her to lose wages. *See* Am. Compl. ¶ 89 (Title VII: "lost income and benefits"), ¶ 106 (IIED: "lost income from her consequential loss of employment"). More precisely, Plaintiff claims that Mr. Stanley's conduct *caused medical injuries* that prevent her from ever working again. Lima Dep. 12:22–25. Thus, in order to establish that the alleged misconduct caused lost wages, Plaintiff must first establish that her medical injuries were caused by Mr. Stanley's misconduct. As explained above, such medical causation can only be established by a medical expert. Because Plaintiff cannot establish that Mr. Stanley caused her medical injuries—which in turn caused her to lose wages—Halle Building is entitled to summary judgment on Plaintiff's claim for lost wages.

---

substantive policy." (quotation and alteration omitted)).

[6] In addition, Plaintiff's claims for battery, IIED, and negligent supervision all include the element of *causation* and, therefore, those torts should be dismissed to the extent Plaintiff seeks medical damages caused by these torts. *See Hawkins*, 101 N.C. App. at 533, 400 S.E.2d at 475 (battery elements); *Simmons v. Chemol Corp.*, 137 N.C. App. 319, 325, 528 S.E.2d 368, 371 (2000) (IIED elements); *Medlin*, 327 N.C. at 591, 398 S.E.2d at 462 (negligent supervision elements).

15
Case 5:14-cv-00896-FL   Document 130   Filed 03/23/18   Page 15 of 18

### C. Plaintiff cannot establish pain and suffering.

Plaintiff also seeks damages for her "pain and suffering" caused by her Title VII and tort claims. When pain and suffering are "*subjective* and of such a nature that laymen cannot, with reasonable certainty, know whether there will be future pain and suffering, it is necessary . . . that there be offered evidence by expert witnesses." *Gillikin v. Burbage*, 263 N.C. 317, 326, 139 S.E.2d 753, 760–61 (1965). Plaintiff claims that she experiences partial paralysis, loss of physical control, pain, and PTSD. Am. Compl. ¶¶ 89, 96, 101, 106, 113; *see* Lima Dep. 8:13–24, 12:22–25, 160:7–20, 163:6–15. These are subjective injuries that can only be established by expert testimony. *See Littleton v. Willis*, 205 N.C. App. 224, 230–32, 695 S.E.2d 468, 473 (2010) (shoulder, ankle, and foot pain are subjective injuries); *Mitchem v. Sims*, 55 N.C. App. 459, 460–62, 285 S.E.2d 839, 840–41 (1982) (headaches, ringing in ears, limited motion, and shoulder and neck pain are subjective injuries); *McCoy v. Dowdy*, 16 N.C. App. 242, 248, 192 S.E.2d 81, 86 (1972) (pain "all through my body" and claims that plaintiff "can't walk too good at times" and is "not able to get around all right now" are subjective injuries). Because Plaintiff does not have a medical expert to testify to her subjective injuries, Plaintiff cannot establish pain and suffering. Therefore, Halle Building is entitled to summary judgment on Plaintiff's claims for pain and suffering.

### CONCLUSION

For the foregoing reasons, Halle Building asks the Court to grant it summary judgment on Plaintiff's claims for a violation of the NCWHA, a violation of Title VII, assault, battery, and intentional infliction of emotional distress. Plaintiff also asks that the Court grant Halle Building summary judgment on Plaintiff's claims for actual medical damages, lost wages, and pain and suffering.

This the 23rd day of March, 2018.

                                      BROOKS, PIERCE, McLENDON,
                                      HUMPHREY & LEONARD, LLP

                                      By: /s/ Craig D. Schauer
                                           Gary S. Parsons
                                      N.C. State Bar No. 7955
                                           Craig D. Schauer
                                    N.C. State Bar No. 41571
                                    *Attorneys for Defendant Halle Building Group*
                                    Post Office Box 1800
                                    Raleigh, North Carolina 27602
                                    Telephone: (919) 573-6241
                                    Facsimile: (336) 232-9040
                                    gparsons@brookspierce.com
                                    cschauer@brookspierce.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No.: 5:14-CV-896-FL

| | |
|---|---|
| MADAY LIMA,<br><br>  *Plaintiff*,<br><br>v.<br><br>MH&WH, LLC; HALLE BUILDING GROUP; MICHAEL J. HOWINGTON; and WENDY A. HOWINGTON;<br><br>  *Defendants* | **CERTIFICATE OF SERVICE** |

The undersigned hereby certifies he electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which pursuant to Local Civil Rule 4.1(e), constitutes service on all counsel of record.

This, the 23rd day of March, 2018.

                BROOKS, PIERCE, McLENDON,
                HUMPHREY & LEONARD, L.L.P.

                By: /s/ Craig D. Schauer
                Craig D. Schauer
                N.C. State Bar No. 41571
                P.O. Box 1800
                Raleigh, North Carolina 27602
                Phone: (919)839-0300
                Fax: (919) 839-0304
                Email: cschauer@brookspierce.com