UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| MADAY LIMA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No.: 5:14-CV-896-FL |
| | ) | |
| MH & WH, LLC; HALLE BUILDING | ) | |
| GROUP; MICHAEL J. HOWINGTON; and | ) | |
| WENDY A. HOWINGTON, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE JOINT EMPLOYMENT OF PLAINTIFF BY DEFENDANTS MH & WH, LLC AND HALLE BUILDING GROUP

I

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF FACTS ........................................................................................1

III.    ARGUMENT .............................................................................................................2

        A.      Standard for Summary Judgment..........................................................................2

        B.      Corporate Defendants Jointly Employed Plaintiff Under the Fair Labor
                Standards Act and the North Carolina Wage and Hour Act. ..................................3

                1.      Factors One and Two: Whether, formally or as a matter of practice,
                        the putative joint employers jointly determine, share, or allocate the
                        power to direct, control, or supervise the worker, hire or fire the
                        worker, or modify the terms or conditions of the worker's
                        employment, whether by direct or indirect means........................................6

                2.      Factors Three, Four, and Five: The degree of permanency, duration
                        of the relationship, nature of control, and work location between the
                        putative joint employers...............................................................................7

                3.      Factor Six: Whether, formally or as a matter of practice, the putative
                        joint employers jointly determine, share, or allocate responsibility
                        over functions ordinarily carried out by an employer, such as
                        handling payroll; providing workers' compensation insurance;
                        paying payroll taxes; or providing the facilities, equipment, tools, or
                        materials necessary to complete the work. ..................................................8

        C.      Corporate Defendants Jointly Employed Plaintiff Under Title VII........................8

                1.      Factor One: Authority to hire and fire the individual. ...............................11

                2.      Factor Two: Day-to-day supervision of the individual, including
                        employee discipline. ..................................................................................11

                3.      Factor Three: Whether the putative employer furnishes the
                        equipment used and the place of work.......................................................12

                4.      Factor Four: Possession of and responsibility over the individual's
                        employment records, including payroll, insurance, and taxes. .................12

                5.      Factor Five: The length of time during which the individual has
                        worked for the putative employer...............................................................12

                6.      Factor Six: Whether the putative employer provides the individual
                        with formal or informal training. ...............................................................13

ii

7.     Factor Seven: Whether the individual's duties are akin to a regular employee's duties. ...................................................................................13

8.     Factors Eight and Nine: Whether the individual is assigned solely to the putative employer, and whether the individual and putative employer intended to enter into an employment relationship....................13

D.    Corporate Defendants Jointly Employed Plaintiff for Purposes of Plaintiff's Common Law Claims. ...........................................................................................14

IV.    CONCLUSION...............................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) .................................................................................. 2, 3

*Arculeo v. On–Site Sales & Mktg., LLC*
  425 F.3d 193 (2d Cir. 2005) ...................................................................... 9

*Barfield v. N.Y.C. Health and Hosps. Corp.*
  537 F.3d 132 (2d Cir. 2008) ...................................................................... 5

*Bouchat v. Balt. Ravens Football Club*
  346 F. 3d 514 (4th Cir. 2003) .................................................................... 3

*Bristol v. Bd. of Cnty. Comm'rs*
  312 F.3d 1213 (10th Cir. 2002) .................................................................. 9

*Brown v. Friday Servs., Inc.*
  119 N.C. App. 753, 460 S.E.2d 356 (1995) .............................................. 14

*Butler v. Drive Auto. Indus. of Am., Inc.*
  793 F.3d 404 (4th Cir. 2015) ...................................................... 9, 10, 11, 14

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) .................................................................................... 2

*Cilecek v. Inova Health Sys. Servs.*
  115 F.3d 256 (4th Cir. 1997) .................................................................... 10

*Community for Creative Non–Violence v. Reid*
  490 U.S. 730, 751-52 (1989) .................................................................... 15

*EEOC v. Pac. Mar. Ass'n*
  351 F.3d 1270 (9th Cir. 2003) .................................................................... 9

*EEOC v. Skanska USA Bldg., Inc.*
  550 Fed. Appx. 253 (6th Cir. 2013) ........................................................... 9

*Farlow v. Wachovia Bank of N. Carolina, N.A.*
  259 F.3d 309, 313 (4th Cir. 2001) ............................................................ 15

*Graves v. Lowery*
  117 F.3d 723 (3d Cir.1997) ........................................................................ 9

*Howard v. Malcolm*
  852 F.2d 101 (4th Cir. 1988) ...................................................................... 9

iv

*In re Apex Express Corp.*
   190 F.3d 624 (4th Cir. 1999) ............................................................................ 2

*King v. Dalton*
   895 F. Supp. 831 (E.D. Va. 1995) ..................................................................... 9

*Magnuson v. Peak Technical Servs., Inc.*
   808 F. Supp. 500 (E.D. Va. 1992) ..................................................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
   475 U.S 574 (1986) ...................................................................................... 2, 3

*McCown v. Hines*
   353 N.C. 683, 549 S.E.2d 175 (2001) .............................................................. 15

*Murphy-Taylor v. Hofmann*
   968 F. Supp. 2d 693 (D. Md. 2013) ................................................................... 9

*Murry v. Jacobs Tech., Inc.*
   2012 WL 1145938 (M.D.N.C. Apr. 5, 2012) ............................................... 14, 15

*Nationwide Mut. Inc. Co. v. Darden*
   503 U.S. 318 (1992) .......................................................................................... 3

*NLRB v. Jewell Smokeless Coal Corp.*
   435 F.2d 1270 (4th Cir. 1970) ........................................................................... 9

*Powell v. P2Enterprises, LLC*
   786 S.E.2d 798 (N.C. Ct. App. 2016) ................................................................. 5

*Robinson v. Sappington*
   351 F.3d 317 (7th Cir. 2003) ............................................................................. 9

*Rutherford Food Corp. v. McComb*
   331 U.S. 722 (1947) .......................................................................................... 3

*Salinas v. Commercial Interiors, Inc.*
   848 F.3d 125 (4th Cir. 2017) ................................................................... passim

*Schultz v. Capital Int'l Sec., Inc.*
   466 F.3d 298 (4th Cir. 2006) ............................................................................. 9

*Simpson v. Greenville Transit Auth.*
   2006 WL 1148167 (D.S.C. Apr. 27, 2006) .......................................................... 9

*United States v. Diebold, Inc.*
   369 U.S. 654 (1962) .......................................................................................... 2

v

*Vinal v. Fed. Nat'l Mortg. Ass'n*
   2014 WL 11996967 (E.D.N.C. Feb. 14, 2014) ........................................................................ 15

*Virgo v. Riviera Beach Assocs., Ltd.*
   30 F.3d 1350 (11th Cir. 1994) ................................................................................................ 9

*Williams v. Grimes Aerospace Co.*
   988 F. Supp. 925 (D.S.C. 1997) ............................................................................................. 9

*Youngblood v. North State Ford Truck Sales*
   321 N.C. 380, 364 S.E.2d 433 (1988) .................................................................................. 15

*Zagaroli v. Neill*
   2017 WL 5161852 (N.C. Super. Nov. 7, 2017) ..................................................................... 5

**Statutes**

29 U.S.C. § 201 ............................................................................................................................ 1

29 U.S.C. § 203 ............................................................................................................................ 3

42 U.S.C. § 2000e ................................................................................................................... 1, 9

N.C. Gen. Stat. § 95-25.1 ............................................................................................................ 1

**Other Authorities**

Restatement (Third) of Employment Law § 1.04 (Am. Law Inst. 2014) ................................... 14

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................................... 2

Fed. R. Civ. P. 56 ..................................................................................................................... 1, 2

Local Civil Rule 56.1 ................................................................................................................ 1, 2

**Regulations**

13 N.C. Admin. Code 12 § .0103 ................................................................................................ 5

29 C.F.R. § 791.2 ..................................................................................................................... 3, 4

# I.    INTRODUCTION

Plaintiff Maday Lima ("Plaintiff"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and in support of her Motion for Partial Summary Judgment on the Joint Employment of Plaintiff by Defendants MH & WH, LLC and Halle Building Group ("Motion"), respectfully submits the following Memorandum of Law.

Plaintiff brought the instant action to recover all unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq.*, and for all available relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and North Carolina common law.[1]  Since the inception of this action, there has never been a dispute as to whether Defendant MH & WH, LLC ("Defendant MH & WH") employed Plaintiff.  *See* SUF ¶ 6.[2]  However, during the course of litigation, Defendant Halle Building Group ("Defendant Halle Building") has repeatedly denied ever employing Plaintiff.  *See id.*  Defendant Halle Building insists on this defense, despite the facts and circumstances of this matter, in tandem with the applicable legal precedent, making clear that they employed Plaintiff during the relevant period.  *See infra.*  The instant Motion seeks to enable the Court to definitively determine that Defendants MH & WH and Halle Building ("Corporate Defendants") jointly employed Plaintiff, in an effort to resolve the issue before this matter goes to trial.

# II.    STATEMENT OF FACTS

---

[1] Plaintiff's claims under North Carolina common law include assault, battery, intentional infliction of emotional distress, and negligent supervision.  *See* Dkt. 105 ¶¶ 1-4.

[2] Plaintiff's separately numbered Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment on the Joint Employment of Plaintiff by Defendants MH & WH, LLC and Halle Building Group, as required under Local Civil Rule 56.1(a)(1), is filed contemporaneously with the instant Motion.  References to facts set forth in that document are cited as "SUF ¶ ____."

1

The undisputed material facts are fully set forth in Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment on the Joint Employment of Plaintiff by Defendants MH & WH, LLC and Halle Building Group ("SUF"), pursuant to Local Civil Rule 56.1(a)(1), and are thus fully incorporated herein.

### III. ARGUMENT

#### A. Standard for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure requires that summary judgment be granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). A "genuine" issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must support its assertion that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). When ruling on a motion for summary judgment, courts must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 587 (1986); *see also United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (citing Fed. R. Civ. P. 1).

To avoid summary judgment, the non-moving party "must do more than simply show that

2

there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586. The "mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 252. Rather, the non-movant must come forward with "specific facts" and "concrete . . . affirmative evidence" showing there is a genuine dispute for trial. *Id.* at 250-52, 256-57; *see also Bouchat v. Balt. Ravens Football Club*, 346 F. 3d 514, 526 (4th Cir. 2003) (requiring the non-moving party to produce "specific, non-speculative evidence" in order to survive a motion for summary judgment).

### B. Corporate Defendants Jointly Employed Plaintiff Under the Fair Labor Standards Act and the North Carolina Wage and Hour Act.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Likewise, "employee" is defined as "any individual employed by an employer." *Id.* at § 203(e)(1). The term "employ" is defined simply as "to suffer or permit to work." *Id.* at § 203(g). According to the Supreme Court, this definition has "striking breadth," and it effectively "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *See Nationwide Mut. Inc. Co. v. Darden*, 503 U.S. 318, 326 (1992). The Supreme Court has instructed courts to construe the terms "employer" and "employee" expansively under the FLSA. *See id.*; *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

With respect to the employer-employee relationship, a single individual may be employed by multiple employers at the same time under the FLSA. *See* 29 C.F.R. § 791.2(a). The regulations distinguish between "separate and distinct employment," in which "two or more employers are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee," and "joint employment," in which "employment by one employer is not completely disassociated from employment by the other employer(s)." *See id.*

3

The regulations also provide three situations "where a joint employment relationship generally will be considered to exist":

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

*Id.* at § 791.2(b).

In analyzing the issue of joint employment, the Fourth Circuit recently developed its own six-factor test to determine whether two or more entities are "not completely disassociated" with respect to a worker under the FLSA regulations (29 C.F.R. § 791.2), and are therefore joint employers. See *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 141 (4th Cir. 2017). The court, therein, articulated the following test:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
>
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;
>
> (3) The degree of permanency and duration of the relationship between the putative joint employers;
>
> (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;
>
> (5) Whether the work is performed on premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

4

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id.* at *141-42. The court emphasized that "one factor alone" can suffice to support a finding of joint employment. *Id.* at 142. The Fourth Circuit also stated that Congress intended for the FLSA to "stretch the meaning of 'employee'" to be far more expansive than that of agency law principles or other statutes, and expressly rejected the argument that the industry-wide customs of the general contractor-subcontractor relationship have any bearing on negating a finding of joint employment. *See id.* at 136, 143-44.[3] The court ultimately found the existence of a joint employer relationship between a subcontractor and a general contractor where, among other things, the employees worked on the general contractor's jobsites and for the general contractor's benefit, the employees interacted directly with foremen of the general contractor, the general contractor required regular safety meetings, and the general contractor provided equipment to the subcontractor. *See id.* at 145-49. The court held that the employees at issue were jointly employed because the general contractor and subcontractor "shared authority over and codetermined the key terms and conditions of [the employees'] employment." *See id.* at 149.[4]

---

[3] Regarding the general contractor-subcontractor argument, the Fourth Circuit cited the Second Circuit, which provided "the prevalence of an industry-wide custom is subject to conflicting inferences. While, on the one hand, it may be 'unlikely' that a prevalent action is 'a mere subterfuge to avoid complying with labor laws,' on the other hand, the very prevalence of a custom may 'be attributable to widespread evasion of labor laws.'" *See id.* at 144 (citing *Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 146 (2d Cir. 2008)).

[4] While the Fourth Circuit's decision in *Salinas* was made under the FLSA, North Carolina courts utilize the same analysis in assessing the NCWHA. *See, e.g., Zagaroli v. Neill*, 2017 WL 5161852, at *6 (N.C. Super. Nov. 7, 2017) (citing *Powell v. P2Enterprises, LLC*, 786 S.E.2d 798, 800 (N.C. Ct. App. 2016) for the proposition that the NCWHA is modeled after the FLSA, and, as such, courts should look to the FLSA for guidance in interpreting the NCWHA; *see generally* 13 N.C. Admin. Code 12 § .0103 (providing that the FLSA is a guide for interpreting the NCWHA).

In this matter, although only "one factor alone" is sufficient for a finding of joint employment, *see Salinas*, 848 F.3d at 142, the facts show that every factor in the Fourth Circuit's six-factor test is met.

> 1. *Factors One and Two: Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, hire or fire the worker, or modify the terms or conditions of the worker's employment, whether by direct or indirect means.*

With respect to the first and second *Salinas* factors, Corporate Defendants, as a matter of practice, jointly shared the power to direct, control, or supervise Plaintiff, hire or fire Plaintiff, or modify the terms of Plaintiff's employment, whether by direct or indirect means, since: (1) Defendant Michael Howington, while overseeing the work of Defendant MH & WH and its employees, including Plaintiff, simultaneously acted as "day-to-day construction management" for Defendant Halle Building; (2) Plaintiff was hired by Warren Halle and Defendant Michael Howington, joint owners of Defendant Halle Building, while on a Defendant Halle Building jobsite, and upon her hiring, Plaintiff was immediately assigned to work with Defendant Halle Building; (3) Plaintiff worked directly under Moises Hernandez, a manager for both Corporate Defendants; (4) Plaintiff's work was supervised and directed by Mark Gramling, a construction management consultant of Defendant Halle Building; (5) Plaintiff's work was supervised and directed by Wesley Stanley, a supervisor of Defendant Halle Building; (6) Plaintiff's work was supervised and directed by Bill Torgerson, a supervisor of Defendant Halle Building; (7) Plaintiff's work was overseen by Rick Cattano, a supervisor of Defendant Halle Building; (8) all managers and supervisors of Defendant Halle Building had the power to modify Plaintiff's work, or terminate Plaintiff's employment; (9) Terry Stanley, an employee of Defendant Halle Building, acted as Plaintiff's superior; (10) Terry Stanley, an employee of Defendant Halle Building,

6

understood Plaintiff to be directly employed by Defendant Halle Building; and (11) Terry Stanley, an employee of Defendant Halle Building, had the authority to fire Plaintiff, though he would first need to receive the approval of Mark Gramling, another employee of Defendant Halle Building. *See* SUF ¶¶ 11-17, 23-25.

> 2. *Factors Three, Four, and Five: The degree of permanency, duration of the relationship, nature of control, and work location between the putative joint employers.*

Regarding the third, fourth, and fifth *Salinas* factors, the nature of the relationship between Corporate Defendants clearly weighs in favor of joint employment, since: (1) Corporate Defendants shared the same principal office, located at 56 Hunter Street, Suite 230, Apex, North Carolina 27502; (2) Defendant Halle Building was jointly owned by Defendant Michael Howington, the owner and principal of Defendant MH & WH; (3) Defendant Halle Building was co-founded by Defendant Michael Howington, the owner and principal of Defendant MH & WH; (4) Defendant Michael Howington, the owner and principal of Defendant MH & WH, acted as the Vice President of Defendant Halle Building; (5) Defendant Michael Howington, the owner and principal of Defendant MH & WH, acted as "day-to-day construction management" for Defendant Halle Building, wherein he would speak to supervisors, check on construction progress, perform quality assessments, and instruct supervisors as to how to perform tasks, among other duties; (6) Plaintiff was hired to perform work for Defendant Halle Building, on property owned or controlled by Defendant Halle Building; and (7) Plaintiff performed work exclusively and "directly" for Defendant Halle Building, and never for any other companies or organizations. *See* SUF ¶¶ 7-11, 22-23.

3. *Factor Six: Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.*

With respect to the sixth *Salinas* factor, Corporate Defendants, as a matter of practice, undoubtedly jointly shared responsibility over functions ordinarily carried out by an employer, since: (1) Defendant Halle Building created, maintained, and kept time records for Plaintiff; (2) Plaintiff was listed on, and her paystubs were based on, timesheets signed by Plaintiff on Defendant Halle Building's records; (3) Plaintiff was required to wear attire bearing Defendant Halle Building's trade name while working; (4) Plaintiff was issued a holiday bonus by Warren "Cookie" Halle and Martha Halle, owners and namesakes of Defendant Halle Building; (5) Plaintiff was hired by Warren Halle and Defendant Michael Howington, joint owners of Defendant Halle Building, while on a Defendant Halle Building jobsite; (6) Plaintiff's work was directed, supervised, and overseen by Defendant Halle Building employees; (7) Plaintiff received job-specific training for each duty she needed to perform, primarily from Moises Hernandez, who was a manager that worked for both Corporate Defendants; (8) Corporate Defendants held weekly jobsite safety meetings, carried out by Mark Gramling, an employee of Defendant Halle Building, during which Plaintiff was trained as to safety duties; and (9) Defendant Halle Building provided employees, including Plaintiff, with hard hats, gloves, brooms, shovels, eye protection, cleaning supplies, and "working tools [and] materials." *See* SUF ¶¶ 12-21, 23-24, 27-29.

## C. <u>Corporate Defendants Jointly Employed Plaintiff Under Title VII.</u>

Under Title VII, "employer" is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42

8

U.S.C. § 2000e(b). "Employee," in turn, is defined as "an individual employed by an employer." *Id.* at § 2000e(f).

While district courts within the Fourth Circuit have frequently applied the joint employment doctrine in the Title VII context,[5] as have other circuit courts,[6] it was not until 2015 that the Fourth Circuit expressly held that, under Title VII, "the joint employment doctrine is the law of this Circuit." *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 409 (4th Cir. 2015). The court, therein, held that the joint employment doctrine is consistent with Fourth Circuit precedent, where it was applied in cases involving analogous statutes,[7] and that the doctrine functions well in capturing instances wherein multiple entities exercise control over an employee, and are therefore each the employee's employers. *Id.* The Fourth Circuit also found that the joint employment doctrine "serves Title VII's purpose of eliminating discrimination," while noting the "broad remedial purposes" of Title VII, and that the doctrine "recognizes the reality of changes in modern employment." *Id.* at 409-410. Ultimately, the court held, "[t]he joint employment doctrine thus prevents those who effectively employ a worker from evading liability by hiding behind another entity." *Id.*

---

[5] *See, e.g., Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 725-28 (D. Md. 2013); *Simpson v. Greenville Transit Auth.*, 2006 WL 1148167, at *3–5 (D.S.C. Apr. 27, 2006); *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 934-36 (D.S.C. 1997); *King v. Dalton*, 895 F. Supp. 831, 837-38 (E.D. Va. 1995); *Magnuson v. Peak Technical Servs., Inc.*, 808 F. Supp. 500, 507-10 (E.D. Va. 1992).

[6] *See, e.g., Arculeo v. On–Site Sales & Mktg., LLC*, 425 F.3d 193, 197-98 (2d Cir. 2005); *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir.1997); *EEOC v. Skanska USA Bldg., Inc.*, 550 Fed. Appx. 253, 256 (6th Cir. 2013); *Robinson v. Sappington*, 351 F.3d 317, 332 n. 9, 337-39 (7th Cir. 2003); *EEOC v. Pac. Mar. Ass'n*, 351 F.3d 1270, 1277 (9th Cir. 2003); *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002); *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359-61 (11th Cir. 1994).

[7] *See, e.g., Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305-06 (4th Cir. 2006) (Fair Labor Standards Act); *Howard v. Malcolm*, 852 F.2d 101, 102, 104-05 (4th Cir. 1988) (Migrant and Seasonal Agricultural Worker Protection Act); *NLRB v. Jewell Smokeless Coal Corp.*, 435 F.2d 1270, 1271 (4th Cir. 1970) (per curiam) (National Labor Relations Act).

9

After finding that the joint employment doctrine was proper under Title VII, the Fourth

Circuit reviewed several tests for joint employment, ultimately adopting the following nine-factor

test:

(1) authority to hire and fire the individual;

(2) day-to-day supervision of the individual, including employee discipline;

(3) whether the putative employer furnishes the equipment used and the place of work;

(4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;

(5) the length of time during which the individual has worked for the putative employer;

(6) whether the putative employer provides the individual with formal or informal training;

(7) whether the individual's duties are akin to a regular employee's duties;

(8) whether the individual is assigned solely to the putative employer; and

(9) whether the individual and putative employer intended to enter into an employment relationship.[8]

*Id.* at 414. The court proceeded to state that the common law element of control remains the

"principal guidepost" in the analysis. *Id.* The Fourth Circuit also provided that "no one factor is

determinative, and the consideration of factors must relate to the particular relationship under

consideration." *Id.* (quoting *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir.

1997)). The court in *Butler* ultimately found that where a plaintiff worked side-by-side with

workers employed by the putative joint employer, was directly engaged in producing the putative

---

[8] The court noted that the ninth factor, regarding the subjective intentions of the parties, "ordinarily will be of minimal importance in the joint employment analysis." *Id.* at 414. Instead, "the intent of the parties should be part of the overall fact-specific inquiry into the putative employee's circumstances." *Id.*

10

joint employer's product, and was supervised by a manager employed by the putative joint employer, a finding of joint employment was proper. *Id.*

In this matter, while "no one factor is determinative," *see id.*, the facts and circumstances make clear that Corporate Defendants jointly employed Plaintiff under the Fourth Circuit's nine-factor test.

### 1. *Factor One: Authority to hire and fire the individual.*

Corporate Defendants equally enjoyed the authority to hire and fire Plaintiff. Indeed, Plaintiff was actually hired by Warren Halle, owner of Defendant Halle Building, who had no ownership stake in Defendant MH & WH, and by Defendant Michael Howington, who had a joint ownership stake in both Corporate Defendants, and was co-founder, Vice President, and "day-to-day construction management" of Defendant Halle Building. *See* SUF ¶¶ 8-11, 23. Corporate Defendants also both had the authority to fire Plaintiff, since all managers and supervisors of Defendant Halle Building, including, but not limited to, Moises Hernandez, Mark Gramling, Wesley Stanley, Bill Torgerson, and Rick Cattano had the ability to terminate Plaintiff's employment. *See id.* ¶ 17. Likewise, Terry Stanley, an employee of Defendant Halle Building, had the authority to fire his subordinates, including Plaintiff, though he would have to first receive the approval of Mark Gramling, also an employee of Defendant Halle Building. *See id.* ¶ 25.

### 2. *Factor Two: Day-to-day supervision of the individual, including employee discipline.*

Corporate Defendants were both responsible for day-to-day supervision of Plaintiff. Defendant Michael Howington, in fact, specifically acted as "day-to-day construction management" for Defendant Halle Building, while he simultaneously acted as owner and principal of Defendant MH & WH, and joint owner, co-founder, and Vice President of Defendant Halle Building. *See id.* ¶¶ 8-11. Plaintiff's work was also managed, supervised, directed, and/or

11

overseen by Moises Hernandez, an employee of both Corporate Defendants, Mark Gramling, a construction management consultant of Defendant Halle Building, Wesley Stanley, a supervisor of Defendant Halle Building, Bill Torgerson, a supervisor of Defendant Halle Building, Rick Cattano, a supervisor of Defendant Halle Building, and Terry Stanley, an employee of Defendant Halle Building. *See id.* ¶¶ 12-16, 24. All of these employees, along with other managers and supervisors of Defendant Halle Building, had the ability to discipline Plaintiff. *See id.* ¶¶ 17, 25.

### 3. *Factor Three: Whether the putative employer furnishes the equipment used and the place of work.*

Throughout Plaintiff's employment with Corporate Defendants, Defendant Halle Building provided employees, including Plaintiff, with hard hats, gloves, brooms, shovels, eye protection, cleaning supplies, and "working tools [and] materials." *See id.* ¶ 29. Defendant Halle Building also furnished the place of work, since Plaintiff worked exclusively and "directly" for Defendant Halle Building, on premises owned or controlled by Defendant Halle Building. *See generally id.* ¶¶ 22-23.

### 4. *Factor Four: Possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes.*

Defendant Halle Building had a corporate practice of creating, maintaining, and keeping time records for all laborers, including Plaintiff. *See id.* ¶ 18. Plaintiff was also listed on, and her paystubs were based on, timesheets signed by Plaintiff on Defendant Halle Building's records. *See id.* ¶ 19.

### 5. *Factor Five: The length of time during which the individual has worked for the putative employer.*

Upon Plaintiff's hiring by Warren Halle and Defendant Michael Howington, which took place on premises owned or controlled by Defendant Halle Building, Plaintiff was immediately assigned to work with Defendant Halle Building. *See id.* ¶ 23. Throughout the duration of her

12

employment, Plaintiff worked exclusively and "directly" for Defendant Halle Building. *See id.* ¶ 22. Plaintiff was never assigned to, and in fact, never did, perform work for any other companies or organizations while under Defendant MH & WH's employ. *See id.* Plaintiff worked for both Corporate Defendants from the date of her hiring, on or about June 10, 2012, until her last day of employment, on or about May 2, 2013. *See* Dkt. 105 ¶¶ 33, 52.

6. *Factor Six: Whether the putative employer provides the individual with formal or informal training.*

While employed with Corporate Defendants, Plaintiff received job-specific training for each duty she needed to perform, primarily from Moises Hernandez, who was a manager that worked for both Corporate Defendants. *See* SUF ¶ 27. Plaintiff was also trained as to safety duties via weekly jobsite safety meetings, carried out by Mark Gramling, an employee of Defendant Halle Building. *See id.* ¶ 28.

7. *Factor Seven: Whether the individual's duties are akin to a regular employee's duties.*

Plaintiff's duties, as a laborer, were akin to a regular employee's duties. In fact, Terry Stanley, the primary subject of a majority of Plaintiff's claims, including her sex-based harassment and discrimination claims under Title VII, was not even aware that Plaintiff did not work for Defendant Halle Building, and thought he was responsible only for workers who were employees of Defendant Halle Building, even though he was also responsible for Plaintiff. *See id.* ¶ 24. It is clear, accordingly, that Plaintiff performed the same duties and was viewed in the same light as a "regular" employee of Defendant Halle Building. *See id.*

8. *Factors Eight and Nine: Whether the individual is assigned solely to the putative employer, and whether the individual and putative employer intended to enter into an employment relationship.*

Plaintiff was hired by Warren Halle, owner of Defendant Halle Building, and Defendant

13

Michael Howington, who had a joint ownership stake in both Corporate Defendants, and was co-founder, Vice President, and "day-to-day construction management" of Defendant Halle Building. *See id.* ¶ 23. As such, it is more than reasonable to presume that Plaintiff and Defendant Halle Building "intended to enter into an employment relationship." Additionally, Plaintiff was immediately assigned solely to Defendant Halle Building, and her work was performed exclusively and "directly" for Defendant Halle Building. *See id.* ¶ 22. Plaintiff was never assigned to perform work for any other companies or organizations during the relevant period. *See id.*

### D. <u>Corporate Defendants Jointly Employed Plaintiff for Purposes of Plaintiff's Common Law Claims.</u>

"Like federal courts, North Carolina recognizes a 'joint employer' theory, under which a person may be an employee of two different employers at the same time." *Murry v. Jacobs Tech., Inc.*, 2012 WL 1145938, at \*7 (M.D.N.C. Apr. 5, 2012), *aff'd*, 568 F. App'x 265 (4th Cir. 2014) (citing *Brown v. Friday Servs., Inc.*, 119 N.C. App. 753, 460 S.E.2d 356, 360 (1995)); *see also* Restatement (Third) of Employment Law § 1.04 (Am. Law Inst. 2014) (providing that it is possible for an individual to be an employee of two or more employers "through the employee's service to each employer in a single course of conduct"). Indeed, as provided in the Fourth Circuit's Title VII decision in *Butler*, the "principal guidepost" in the joint employment analysis is the common law element of control. *Butler*, 793 F.3d at 414. The Fourth Circuit, in hearing an appeal from the Middle District of North Carolina, reviewed the "common law agency definition of employee" to determine whether a plaintiff was an employee of a defendant, looking to "the hiring party's right to control the manner and means by which the product is accomplished," including:

> [T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the

14

regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

*See Farlow v. Wachovia Bank of N. Carolina, N.A.*, 259 F.3d 309, 313 (4th Cir. 2001) (quoting

*Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751-52 (1989)). Similarly, in

analyzing employer status, North Carolina applies a "right to control" test, using six non-

exhaustive factors to determine whether such control exists, including:

> (1) the source and nature of compensation;
>
> (2) the provision of tools necessary for the job;
>
> (3) control over the time at which work is performed;
>
> (4) control over the manner in which work is performed;
>
> (5) the right to terminate; and
>
> (6) the assignment of duties.

*Murry*, 2012 WL 1145938, at *7 (citing *Youngblood v. North State Ford Truck Sales*, 321 N.C.

380, 364 S.E.2d 433, 437-38 (1988)).[9] These factors are non-exhaustive, and satisfaction of all

factors is not necessary for a finding of joint employment; courts should weigh the factors in order

to determine joint employer status. *See id.* Applying these factors, the court in *Murry* found that

AT&T was an engineer's joint employer where, although the contract at issue between AT&T and

the subcontractor disavowed any employment relationship, and although AT&T never paid the

engineer, AT&T exerted control over the engineer by overseeing his work, assigning tasks to him,

---

[9] North Carolina courts have also applied other, similar tests to determine whether a putative employer has the "right to control" an individual, though those tests are typically applied in determining whether an individual is an employee or an independent contractor. *See, e.g., Vinal v. Fed. Nat'l Mortg. Ass'n*, 2014 WL 11996967, at *3 (E.D.N.C. Feb. 14, 2014) (citing *McCown v. Hines*, 353 N.C. 683, 687, 549 S.E.2d 175, 177-78 (2001), for an eight-factor test largely focusing on whether the individual is an independent contractor). The *Murry* court, by contrast, applied the "right to control" test to determine whether an employer was a joint employer under North Carolina common law. *See Murry*, 2012 WL 1145938.

and possessing the right to terminate his employment.  *See id.*

In this matter, although not all factors are necessary, all six factors support a joint employment theory under North Carolina common law.  First, Plaintiff was listed on, and her paystubs were based on, timesheets signed by Plaintiff on Defendant Halle Building's records.  *See* SUF ¶ 19.  She was also issued a holiday bonus by Warren "Cookie" Halle and Martha Halle, owners and namesakes of Defendant Halle Building.  *See id.* ¶ 21.  Second, Defendant Halle Building provided Plaintiff with tools necessary for the job, including hard hats, gloves, brooms, shovels, eye protection, cleaning supplies, and "working tools [and] materials."  *See id.* ¶ 29.  Third, Defendant Halle Building created, maintained, and kept time records for Plaintiff, and her pay was based on those records.  *See id.* ¶¶ 18-19.  Fourth, Plaintiff's work was directly controlled and managed by employees of Defendant Halle Building.  *See id.* ¶¶ 12-16, 24.  Fifth, employees of Defendant Halle Building had the ability to unilaterally discipline and/or terminate Plaintiff.  *See id.* ¶¶ 17, 25.  Sixth, Plaintiff's work was assigned and directed by employees of Defendant Halle Building.  *See id.* ¶¶ 12-16, 24.  Indeed, upon her hiring, Plaintiff was immediately assigned to work with Defendant Halle Building.  *See id.* ¶ 23.  These facts, in tandem with the other facts of this matter, as provided *supra*, clearly exhibit that Defendant Halle Building had the right to control Plaintiff's work, sufficient to render it a joint employer of Plaintiff under North Carolina common law.

## IV.  <u>CONCLUSION</u>

For the above reasons, Plaintiff respectfully requests the Court grant her Motion for Partial Summary Judgment on the Joint Employment of Plaintiff by Defendants MH & WH, LLC and Halle Building Group.

16

Respectfully submitted March 23, 2018

/s/ Gilda Adriana Hernandez
Gilda A. Hernandez (NCSB No. 36812)
Michael B. Cohen (NCSB No. 50629)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
1020 Southhill Dr. Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mcohen@gildahernandezlaw.com


Kirk J. Angel (NCSB No. 33559)
**THE ANGEL LAW FIRM, PLLC**
PO Box 1296
Concord, NC 28026
Tel: (704) 706-9292
Fax: (704) 973-7859
kirk@mailalf.com

*Attorneys for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 23, 2018, I electronically filed the foregoing true and accurate copy of **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE JOINT EMPLOYMENT OF PLAINTIFF BY DEFENDANTS MH & WH, LLC AND HALLE BUILDING GROUP** with the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served the document to the following:

Paul A. Sheridan, State Bar No. 19272
**HANNAH SHERIDAN**
**LOUGHRIDGE & COCHRAN, LLP**
5400 Glenwood Avenue, Suite 410
Raleigh, North Carolina 27612
Telephone: (919) 859-6840
Facsimile: (919) 859-6843
psheridan@hslc-Iaw.com

*Attorney for Wendy A. Howington*

Craig D. Schauer, State Bar No. 41571
**BROOKS PIERCE LAW FIRM**
PO Box 1800
Raleigh, NC 27602
Telephone: (919) 573-6206
cschauer@brookspierce.com

*Attorney for Halle Building Group*

J. Anthony Penry
**PENRY | RIEMANN PLLC**
1330 Saint Mary's Street, Suite 260
Raleigh, NC 27603
Telephone: 919.833.9449 x203
Facsimile: 815.572.9699
andy.penry@penryriemann.com

*Attorney for MH & WH, LLC and Michael J. Howington*

18

*/s/ Gilda Adriana Hernandez*

Gilda A. Hernandez (NCSB No. 36812)
Michael B. Cohen (NCSB No. 50629)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
1020 Southhill Dr. Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mcohen@gildahernandezlaw.com


Kirk J. Angel (NCSB No. 33559)
**THE ANGEL LAW FIRM, PLLC**
PO Box 1296
Concord, NC 28026
Tel: (704) 706-9292
Fax: (704) 973-7859
kirk@mailalf.com

*Attorneys for Plaintiff*

19